**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WALGREEN CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 14-125 (GMS) |
| v. | ) |
| | ) |
| SHOPKO STORES OPERATING CO., LLC and MSCRIPTS LLC, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF WALGREEN CO.'S ANSWER TO**
**DEFENDANT MSCRIPTS, LLC'S COUNTERCLAIMS**

Plaintiff Walgreen Co. ("Walgreens"), hereby responds to Defendant mscripts, LLC's ("Defendant") Counterclaims (D.I. 34) as follows, using the paragraph numbers set forth in the Counterclaims of mscripts, LLC. Except as expressly admitted herein, each of the allegations of Defendant's Counterclaims is denied.

**Introduction**

47. This paragraph contains Defendant's prayer for relief, to which no response is required. To the extent that a response to the prayer is required, Walgreens denies that Defendant is entitled to such relief. Walgreens lacks knowledge or information sufficient to admit or deny the allegations that "mscripts is a small, start-up technology company engaged in the development of [mobile apps and] other products and services" and therefore denies them. Walgreens denies that Mr. Cullen is a co-inventor of the 530 Patent, denies that Defendant is a co-owner of the 530 Patent, and denies that Defendant is a co-owner of the 530 Patent and entitled to practice and license the 530 Patent to others.

48. Walgreens lacks knowledge or information sufficient to admit or deny the allegation that "mscripts has been developing its suite of products since 2007" and therefore denies them. Walgreens denies that mscripts developed "competing approaches" vis-à-vis Walgreens "long before" Walgreens. Walgreens denies that mscripts provided Walgreens with access to "detailed information about [mscripts'] products." Walgreens admits that a mutual non-disclosure agreement naming Walgreen Co. and Remscripts, LLC ("Remscripts") as parties was signed in or about December 2009. Walgreens admits that it requested a proposal from Remscripts, among other companies. Walgreens admits that Remscripts submitted a proposal addressed to Walgreens employees Tim McCauley and William J. Walsh. In addition to the requested information, Remscripts' proposal included extraneous, unsolicited information purporting to list Remscripts' "full list of services." Walgreens admits that Mr. McCauley is a named inventor on the 530 Patent. Walgreens admits that it declined to proceed with Remscripts in 2010. Except as expressly admitted, Walgreens denies the remaining allegations of this paragraph.

49. Denied.

50. Denied.

## The Parties

51. Walgreens lacks knowledge or information sufficient to admit or deny the allegations in this paragraph and therefore denies them.

52. Admitted.

## Jurisdictional Statement

53. This paragraph contains legal conclusions, not allegations of fact, and thus no response is required. To the extent that a response is required, Walgreens admits that this Court

has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202. Except as expressly admitted, Walgreens denies the remaining allegations of this paragraph.

54. This paragraph contains legal conclusions, not allegations of fact, and thus no response is required. To the extent that a response is required, Walgreens admits that it conducts business in the State of Delaware and has brought suit in this District to assert the 530 Patent. Walgreens admits that this Court has personal jurisdiction over Walgreens in this action.

55. This paragraph contains legal conclusions, not allegations of fact, and thus no response is required. To the extent that a response is required, Walgreens admits that venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**Facts**

56. Walgreens denies the allegations of this paragraph as it lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and as the term "other products" is vague and undefined.

57. Walgreens denies the allegations of this paragraph as it lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and as the term "mscripts' product" is vague and undefined.

58. Walgreens denies the allegations of this paragraph as it lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and as the term "mscripts' product" is vague and undefined.

59. Walgreens admits that, as of November 13, 2008, it had not launched an "app" that "enable[d] consumers to refill their prescriptions."

60. Walgreens lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

61. Walgreens lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

62. Walgreens admits that Tim McCauley is a named inventor on the 530 Patent. Walgreens lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies them.

63. Walgreens admits that, as of May 21, 2009, it had not launched an "app" that "enable[d] consumers to refill their prescriptions."

64. Walgreens denies the allegations of this paragraph as it lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and as the term "the mscripts product" is vague and undefined.

65. Walgreens admits that, as of June 15, 2009, it had not launched an "app" that "enable[d] consumers to refill their prescriptions."

66. Walgreens admits that on or about October 27, 2009, Mr. McCauley and Mr. Walsh met with Mr. Cullen. Walgreens denies the remaining allegations of this paragraph as it lacks knowledge or information sufficient to admit or deny the allegations of this paragraph, and as the term "mscripts' product" is vague and undefined.

67. Walgreens admits that it re-launched its mobile website on or about September 24, 2009. Walgreens admits that the re-launched website could be accessed using an Internet browser on a mobile device. Walgreens lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies them.

68. Walgreens admits that it launched a mobile app on or about October 26, 2009. Walgreens admits that the app could be used on an iPhone. Walgreens admits that the app included, among other features, a feature for allowing a customer to upload and order photographs for printing at a Walgreens store and a feature to locate Walgreens stores using

GPS.  Walgreens lacks knowledge or information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies them.

69.    Walgreens admits that a Mutual Nondisclosure Agreement ("Mutual NDA") naming Walgreen Co. and Remscripts, LLC as parties was signed in or about December 2009. Walgreens admits that the Mutual NDA speaks for itself.  Except as expressly admitted, Walgreens denies the remaining allegations of this paragraph.

70.    Admitted.

71.    Walgreens admits that, in response to an email and a voicemail from Mark Cullen to Bill Walsh asking what should be included in a proposal, Bill Walsh sent Mr. Cullen a second email on December 17, 2009.  Walgreens admits that Mr. Walsh provided Mr. Cullen with "some general areas" that could be included in Mr. Cullen's proposal.  Walgreens admits that Tim McCauley and others were copied on the email.  Walgreens denies the remaining allegations of this paragraph as the term "mscripts' product" is vague and undefined.  Except as expressly admitted, Walgreens denies the remaining allegations of this paragraph.

72.    Walgreens lacks knowledge or information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

73.    Walgreens admits that Mr. Cullen sent Mr. McCauley and Mr. Walsh a proposal on or about December 22 or 23, 2009. Walgreens admits that the proposal purported to describe certain mscripts services.  Walgreens admits that Appendix 1 to the proposal states that "mscripts has developed an integrated set of mobile services including 2-way SMS communications, mobile browser services, and easy-to-use native phone applications, all designed to allow pharmacies' customers to manage their prescriptions, pharmacy relationships, offers/ coupons, and related health information via their phones."  Walgreens admits that Appendix 2 to the proposal purports to "provide[] the full list of services mscripts provides [beyond] the adherence

functionality of interest to Walgreens" purportedly contained in the preceding proposal. Appendix 2 includes the language "[a]bility to request refills and transfer prescriptions." Walgreens admits that Appendix 2 includes, under a bullet beginning "[a]bility to send users 2-way interactive, threaded messages," the language, "For example, a refill request message can be sent giving the customer the ability to respond with . . . (3) to refill at a different store." Walgreens denies the remaining allegations of this paragraph as the terms "mscripts' product" and "the product" are vague and undefined. Except as expressly admitted, Walgreens denies the remaining allegations of this paragraph.

74.   Walgreens admits that Mr. Walsh sent an email to Mr. Cullen around January 14, 2010, declining mscripts' proposal. Walgreens admits that the words, "expansive and compelling," appear in the email, but denies that it was used to describe any particular "mscripts' product." Walgreens denies the remaining allegations of this paragraph as the term "mscripts' product" is vague and undefined. Walgreens admits that the email stated that Walgreens would not "be pursuing mscripts for [its] short-term Adherence plans." Except as expressly admitted, Walgreens denies the remaining allegations of this paragraph.

75.   Walgreens admits that it released updates to the Walgreens mobile website and iPhone app around May or June of 2010. Except as expressly admitted, Walgreens denies the remaining allegations of this paragraph.

76.   Admitted.

77.   Walgreens admits that during prosecution of the '507 Application, certain application claims were rejected under 35 U.S.C. § 103. Walgreens admits that certain application claims were amended during their pendency. Walgreens admits that the language "wherein the information to be displayed in the order review page includes the pharmacy location and an option to change the pharmacy location," and "wherein the prescription pickup

information to be displayed in the second display of the application includes a pharmacy pickup location and an option to change the pharmacy pickup location," appears in claims 1 and 10, respectively, of the 530 Patent. Walgreens denies that these elements were "specifically disclosed and suggested to Walgreens" by mscripts. Except as expressly admitted, Walgreens denies the remaining allegations of this paragraph.

78. Walgreens denies the allegation that it has "wronged" Defendant. Rather than claiming that it had been "wronged," mscripts' CEO has praised the functionality of Walgreens' app and Walgreens' promotion of mobile technology for pharmacies. In early 2012, more than two years before alleging a violation of contractual obligations in this lawsuit, mscripts' CEO stated publicly that Walgreens' development and promotion of its mobile pharmacy technology "was the best thing that ever happened to" mscripts. The remaining allegations of this paragraph state Defendant's prayer for relief, compensation and a declaration that Defendant co-owns the 530 Patent, to which no response is required. To the extent that a response is required, Walgreens denies that Walgreens injured Defendant and that Defendant is entitled to the relief it requests.

**COUNT I**

**(Correction of Inventorship of the 530 Patent under 35 U.S.C. § 256)**

79. Walgreens restates its responses to paragraphs 47-78 and incorporates each as if fully set forth herein.

80. Denied.

81. Denied.

82. Denied.

01:14887781.1

## COUNT II

### (Declaration of Co-ownership of the 530 Patent)

83. Walgreens restates its responses to paragraphs 47-82 and incorporates each as if fully set forth herein.

84. This paragraph contains Defendant's prayer for relief for the Court to name mscripts as a co-owner of the 530 Patent, to which no response is required. To the extent that a response is required, Walgreens denies the allegation and denies that Defendant is entitled to such a declaration.

85. Denied.

86. Walgreens lacks knowledge or information sufficient to admit or deny the allegation that an agreement exists between Mr. Cullen and Defendant and therefore denies them. Walgreens denies that Mr. Cullen, Defendant or any of Defendant's predecessors or successors is an owner of the 530 Patent.

## COUNT III

### (Breach of Contract)

87. Walgreens restates its responses to paragraphs 47-86 and incorporates each as if fully set forth herein.

88. Denied.

89. Denied.

90. Denied.

## PRAYER FOR RELIEF

Paragraphs A-F set forth Defendant's prayer for relief, to which no response is required. To the extent a response is required, Walgreens denies the allegations contained in paragraphs A-

F and denies that Defendant is entitled to any of the relief requested therein, or to any other and further relief.

## AFFIRMATIVE DEFENSES

In addition to denying the foregoing allegations and denying that Defendant is entitled to any relief, Walgreens hereby alleges the following facts and affirmative defenses, in numbered paragraphs starting at paragraph 91:

### First Affirmative Defense

91. Defendant fails to allege facts sufficient to state a cause of action for correction of inventorship of the 530 Patent, and therefore fails to state a claim upon which relief may be granted.

92. On or about May 18, 2009, Walgreens contracted with a third party, Usablenet, Inc., regarding the re-launch of a mobile website, and regarding a mobile application ("app"). Among the features to be included in both the mobile website and app were the ability for customers to manage their prescriptions, order refills to pickup at any Walgreens pharmacy nationwide, view advertisements and offers, and locate stores.

93. In August 2009, Walgreens contracted with a third-party, 3Cinteractive, regarding corresponding with customers via mobile text messages, including providing customers with text alerts regarding the status of their prescriptions.

94. In September 2009, Walgreens re-launched its mobile website. In October 2009, Walgreens launched an iPhone app. The re-launched mobile website and iPhone app both allowed customers to manage their prescriptions, order refills to pickup at any Walgreens pharmacy nationwide, view advertisements and offers, and locate Walgreens stores. Through Walgreens' first iPhone app, and prior to December 2009, Walgreens' customers could change the store at which their prescription would be refilled.

95. On October 27, 2009, Mark Cullen met with Tim McCauley and Bill Walsh at Walgreens corporate headquarters in Deerfield, Illinois. The parties did not sign a nondisclosure agreement prior to the meeting.

96. On November 3, 2009, Mark Cullen sent Tim McCauley and Bill Walsh an email expressing his gratitude for Mr. McCauley and Mr. Walsh taking the time to meet with him the previous week. Mr. Cullen stated that he had been putting "ideas into a proposal" and that the proposal would "outline technology, approaches, and concrete solution options" for Walgreens.

97. On November 20, 2009, Mark Cullen sent Tim McCauley and Bill Walsh another email acknowledging that the parties were "still working through the NDA" but that he "did not want the legal process to stop [their] discussions cold." Mr. Cullen attached a document to that email. In the document, Mr. Cullen stated that "in advance of getting the [NDA] in place, he wanted to reach out to [Walgreens] to provide [Walgreens] with an update on [Remscripts'] internal adherence initiatives, and to propose some next steps for continuing" the conversation. Mr. Cullen identified "three areas of adherence" on which he had purportedly been working: "push technology to notify patients of adherence alerts"; technology to integrate with mobile device calendars to allow patients "to easily add and manage calendar events for dosage, refill, and other reminders"; and "interactive 2-way SMS text message service."

98. In December 2009, a Mutual Nondisclosure Agreement ("Mutual NDA") was signed, naming Walgreen Co. and Remscripts, LLC as parties. The Mutual NDA includes a "No Commitment" clause, which states, among other things, that "Neither Party has an obligation to supply information hereunder and neither Party has an obligation hereunder to enter into any other contract with the other Party," that "Nothing in this Agreement shall be deemed to restrict either Party from entering into agreements with competitors of the other Party," and that "Nothing in this Agreement shall be construed as a prohibition or limitation on either Party's

ability to obtain or develop products or services similar to those offered by the Receiving Party, or from engaging with another entity to do so, provided that the Parties agree that this sentence is not intended to be construed as an exception to the obligations set forth in Section 1.2."

99. On December 17, Mark Cullen sent an email to Bill Walsh after leaving a voicemail for Bill Walsh. In the email, Mr. Cullen asked Mr. Walsh whether he, Tim McCauley, or both, would have time to speak with him about the proposal. Mr. Cullen indicated that he was unsure what should be included in the proposal.

100. In response, Mr. Walsh sent Mr. Cullen an email on December 17 that provided a bullet point list of "some general areas" that Mr. Walsh wanted to see in the proposal. The list included: "Summary of Proposal"; "Technical Approach"; "Product Features (and future products/services)"; "Screen Shots of Potential Alerts"; "Platform Scope (Android, iPhone, Blackberry, feature phones, etc…)"; "Distribution Recommendations"; "Licensing Costs broken out / Ongoing costs"; "Lead times for initial deployment"; "What tools/resources mscripts would need from Walgreens to integrate"); "Comparison of your offering vs. known competitors (if available)"; and "Customer Service and Support."

101. On or about December 22 or 23, 2009, Mark Cullen emailed a proposal, dated December 22, 2009, to Tim McCauley and Bill Walsh. The proposal opened with Mr. Cullen stating that he hoped the "proposal represent[ed] the first step in a conversation that result[ed] in a mutually beneficial relationship." The opening paragraph also stated that "Walgreens [wa]s interested in a proposal that leverages aspects of the mscripts platform to augment its existing adherence initiatives."

102. Appendix 2 to the proposal purports to "provide[] the full list of services mscripts provides [beyond] the adherence functionality of interest to Walgreens" that was purportedly contained in the preceding proposal. Under a bullet beginning "[a]bility to send users 2-way

interactive, threaded messages," Appendix 2 includes the language, "For example, a refill request message can be sent giving the customer the ability to respond with . . . (3) to refill at a different store."

103. At an Innovation Summit held in about January 2012, Mark Cullen discussed features of mscripts' products and services. One thing that he discussed was text message alerts to patients regarding the status of prescription refill orders. Mr. Cullen went on to describe mscripts' competition as being only Walgreens. He stated that "[t]he only people out there who are competing with [mscripts], there's one[,] Walgreens. Walgreens is competing with us, and it was the best thing that ever happened to us. They put a placard on every single store in every single city in this country, saying, Ask us about mobile."

104. On information and belief, prior to Walgreens enforcing the 530 Patent against mscripts in this action, Mr. Cullen never indicated, either publicly or to Walgreens, that (1) he was a contributor to any Walgreens mobile application technology, including Walgreens' Refill-By-Scan technology, (2) Walgreens misappropriated any confidential information of Remscripts or mscripts, or (3) Walgreens breached any agreement with Remscripts or mscripts.

**Second Affirmative Defense**

105. Walgreens restates the facts set forth in paragraphs 91-104 and incorporates each as if fully set forth herein.

106. Defendant fails to allege facts sufficient for a declaration of co-ownership of the 530 Patent, and therefore fails to state a claim upon which relief may be granted.

**Third Affirmative Defense**

107. Walgreens restates the facts set forth in paragraphs 91-104 and incorporates each as if fully set forth herein.

108. Defendant fails to allege facts sufficient to state a cause of action for breach of contract. For example, and among other things, Defendant does not attach a copy of any written contract or agreement to its Counterclaim.

**Fourth Affirmative Defense**

109. Walgreens restates the facts set forth in paragraphs 91-104 and incorporates each as if fully set forth herein.

110. Walgreens did not breach any provision of the Mutual Nondisclosure Agreement. Among other things, the mutual NDA expressly stated that "Nothing in this Agreement shall be construed as a prohibition or limitation on either Party's ability to obtain or develop products or services similar to those offered by the Receiving Party, or from engaging with another entity to do so, provided that the Parties agree that this sentence is not intended to be construed as an exception to the obligations set forth in Section 1.2."

**Fifth Affirmative Defense**

111. Walgreens restates the facts set forth in paragraphs 91-104 and incorporates each as if fully set forth herein.

112. Defendant's claim for Breach of Contract is barred by the statute of limitations.

**Sixth Affirmative Defense**

113. Walgreens restates the facts set forth in paragraphs 91-104 and incorporates each as if fully set forth herein.

114. Defendant's claim for Breach of Contract is barred by the doctrines of estoppel, waiver, laches, and/or other applicable equitable doctrines.

**Seventh Affirmative Defense**

115. Walgreens restates the facts set forth in paragraphs 91-104 and incorporates each as if fully set forth herein.

116. Defendant's claim for Breach of Contract is barred because the terms sought to be enforced are vague, overbroad, unclear, or ambiguous, and are therefore unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Walgreens respectfully requests the following relief:

A. Entry of judgment in favor of Walgreens and against mscripts with respect to mscripts' Counterclaims, and an award of the relief sought in Walgreens' First Amended Complaint and Demand for Jury Trial and Injunctive Relief Sought (D.I. 32);

B. Dismissal of mscripts' Counterclaims with prejudice;

C. A declaration that this case is exceptional under 35 U.S.C. § 285;

D. An award to Walgreens of its attorney's fees, costs and expenses; and

E. Such other relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Walgreens demands a trial by jury of any and all issues triable of right before a jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure and District of Delaware Local Rule 38.1.

Date: May 9, 2014

Of Counsel:

Timothy J. Malloy
Scott P. McBride
Daniel S. Stringfield
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661
(312) 775-8000
tmalloy@mcandrews-ip.com
smcbride@mcandrews-ip.com
dstringfield@mcandrews-ip.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
James L. Higgins (No. 5021)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
jhiggins@ycst.com

*Attorneys for Plaintiff*
*Walgreen Co.*

01:14887781.1

## **CERTIFICATE OF SERVICE**

I, Anne Shea Gaza, Esquire, hereby certify that on May 9, 2014, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that on May 9, 2014, I caused a copy of the foregoing document to be served by e-mail upon the following:

| | |
|---|---|
| Collins J. Seitz, Jr., Esquire<br>Benjamin J. Schladweiler, Esquire<br>**Seitz Ross Aronstam & Moritz LLP**<br>100 S. West Street, Suite 400<br>Wilmington, DE 19801<br>*cseitz@seiztross.com*<br>*bschladweiler@seitzross.com* | Jeremy A. Younkin, Esquire<br>Claire Laporte, Esquire<br>**Foley Hoag LLP**<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210<br>*jyounkin@foleyhoag.com*<br>*claporte@foleyhoag.com* |
| *Attorneys for Defendants Shopko Stores Operating Co., LLC and mscripts, LLC* | *Attorneys for Defendants Shopko Stores Operating Co., LLC and mscripts, LLC* |

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

 */s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4073)
James L. Higgins (No. 5021)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
302-571-6600
agaza@ycst.com
jhiggins@ycst.com

*Attorneys for Plaintiff*

Dated: May 9, 2014

01:15174409.1